# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO.: 5:05CV227

| | |
|---|---|
| AMY WILMARTH, )<br>)<br>    Plaintiff, )<br>)<br>    vs. )<br>)<br>F. ERWIN MCKENZIE, JR., )<br>Executor of the Estate of )<br>MARTHA W. MCKENZIE, )<br>)<br>    Defendant. )<br>_____ ) | **ORDER** |

**THIS MATTER** is before the Court on the following Motions and Memoranda: (1) Plaintiff's Motion for Partial Summary Judgment and Memorandum in Support, both filed May 30, 2006 [Documents ## 35, 36]; (2) Unnamed Defendant St. Paul Travelers Property Casualty Insurance Company's Motion for Summary Judgment and Memorandum in Support, both filed May 30, 2006 [Documents ## 37, 38]; (3) Defendant's Second Motion to Amend Answer, filed June 22, 2006 [Document # 44]; (4) Defendant's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment and Memorandum in Support of Defendant's Second Motion to Amend Answer, filed June 22, 2006 [Document # 43]; (5) Defendant's Response in Opposition to Unnamed Defendant St. Paul Travelers Property Casualty Insurance Company's Motion for Summary Judgment, filed July 3, 2006 [Document # 45]; (6) Plaintiff's Reply Memorandum in Support of Motion for Partial Summary Judgment, filed July 6, 2006 [Document # 47]; (7) Unnamed Defendant St. Paul Travelers Property Casualty Insurance Company's Reply Memorandum in Support of Motion for Summary Judgment, filed July 24, 2006 [Document #

1

52]; (8) Defendant's Supplemental Memorandum in Opposition to Unnamed Defendant St. Paul Travelers Property Casualty Insurance Company's Motion for Summary Judgment, filed December 22, 2006 [Document #66]; and (9) Unnamed Defendant St. Paul Travelers Property Casualty Insurance Company's Supplemental Reply Brief in Support of Motion for Summary Judgment, filed January 3, 2007 [Document # 67]. These Motions are now ripe for disposition by the Court.

Having carefully considered the arguments, the record, and the applicable authority, for the reasons stated below, the Court will deny Plaintiff's Motion for Partial Summary Judgment, deny Unnamed Defendant St. Paul Travelers Property Casualty Insurance Company's Motion for Summary Judgment, and grant Defendant's Second Motion to Amend Answer.

## I. FACTUAL AND PROCEDURAL HISTORY

This case arises out of an automobile accident involving Plaintiff Amy Wilmarth ("Wilmarth" or "Plaintiff"), and Defendant's decedent Martha W. McKenzie ("McKenzie" or "Defendant's decedent"). On July 20, 2005, Plaintiff filed suit in this Court based on diversity of the parties, pursuant to 28 U.S.C. § 1332. Plaintiff seeks damages against F. Erwin McKenzie, Jr., Executor of the Estate of Martha W. McKenzie ("Defendant") for injuries arising out of the automobile accident. On October 4, 2005, St. Paul Travelers Property Casualty Insurance Company ("St. Paul Travelers"), as an Unnamed Defendant, filed an Answer to Plaintiff's Claim and a Cross-claim against Defendant. St. Paul Travelers covered Plaintiff's automobile and now seeks indemnification from Defendant for the amount of underinsured motorist proceeds paid to Plaintiff as a result of the accident.

On October 31, 2003, at approximately 1:50 p.m., Defendant's decedent, Martha

McKenzie, a resident of Wilkesboro, North Carolina, was driving a 2000 Buick, traveling east on Interstate 40 in the right-hand lane in Forysth County, near Winston Salem, North Carolina. (Aff. of Trooper Phillip Morgan Dixson, Ex. A at 1). At the same time, Russell Conley ("Conley") was traveling in the middle lane next to McKenzie, driving a 2000 Freightliner tractor trailer. (*Id*.). Also at the same time, Plaintiff, a resident of Danville, Virginia, was traveling in the left-hand lane next to Conley as a passenger in a 2001 Audi driven by Plaintiff's husband. (*Id*. at 2). As the three vehicles traveled alongside one another, McKenzie's vehicle moved into the middle lane, striking the front right of Conley's tractor trailer. (*Id*. at 3). The collision with Conley's tractor trailer caused McKenzie's vehicle to travel into the left-hand lane and strike Plaintiff's vehicle. (*Id*.). The collision between McKenzie's and Plaintiff's vehicles forced both vehicles further to the left, off of Interstate 40 and into the median, where the momentum of the collision carried the two vehicles over an embankment to their final resting point on a roadway over which Interstate 40 passed. (*Id*.). Conley's tractor trailer came to a controlled stop on the right shoulder of Interstate 40. (*Id*.).

After the accident, EMS transported Plaintiff, Plaintiff's husband, and McKenzie to Wake Forest Medical Center. (Pl's Dep. at 32; Def's Resp. in Opp. to Pl's Mt. for Part. Sum. Judg. at 3). McKenzie initially survived the accident, but died a short time after being transported to Wake Forest Medical Center. (Def's Resp. in Opp. to Pl's Mt. for Part. Sum. Judg. at 3). Plaintiff suffered severe injuries as a result of the accident, some of the injuries required extensive surgery and rehabilitation. (Pl's Dep. at 38-58).

At the time of the accident, McKenzie was insured by Progressive Auto Insurance ("Progressive") with coverage limits of $100,000 per person and $300,000 per accident for

bodily injury. (Def's Ans. To Pl's First Set of Irr.'s at 1). Prior to this lawsuit, Progressive tendered $100,000, the liability limit under its policy with McKenzie, to Plaintiff in exchange for a release of its liability under its policy with McKenzie. (St. Paul Travelers' Mem. in Supp. of Mt. for Sum. Judg. at 7). St. Paul Travelers was notified of Progressive's tender, and in response thereto, St. Paul Travelers matched Progressive's $100,000 tender, and timely advanced the $100,000 to Plaintiff in order to preserve its subrogation rights under North Carolina law.[1] (St. Paul Travelers' Underinsured Advance and Trust Agreement at 1). On April 7, 2005, St. Paul Travelers memorialized its advancement and preservation of its subrogation rights in an Underinsured Advance and Trust Agreement with Plaintiff. (*Id.*).

On July 18, 2005, Plaintiff filed a Complaint against Defendant, alleging negligence by McKenzie, and seeking damages in the amount of $950,000. (Compl. ¶¶ 11, 12). On October 3, 2005, St. Paul Travelers filed its Answer as an Unnamed Defendant and asserted its Cross-claim against Defendant, seeking indemnity against Defendant for the $100,000 that St. Paul Travelers had advanced to Plaintiff, as well as for any future amounts that St. Paul Travelers would pay to Plaintiff for injuries arising from the accident. (St. Paul Travelers' Answ. and Crosscl. at 3-4). On December 8, 2005, St. Paul Travelers paid an additional $200,000 to Plaintiff, exhausting its liability to Plaintiff under the terms of Plaintiff's policy with St. Paul Travelers. (St. Paul Travelers Underinsured Motorist Release and Agreement). St. Paul Travelers memorialized the satisfaction of its liability to Plaintiff in an Underinsured Advance and Trust Agreement with Plaintiff. (*Id.*).

---

[1] Defendant raises the issue of whether St. Paul Travelers' subrogation rights arise under North Carolina law or Virginia law. (Def's Resp. in Opp. to St. Paul Travelers' Mt. for Sum. Judg., pp. 3-5). The Court discusses this issue below.

## II.  DISCUSSION

A.  **Plaintiff's Motion for Summary Judgment and Defendant's Second Motion to Amend Answer**

Plaintiff now moves for partial summary judgment, arguing that Defendant has admitted liability through his Amended Answer, and that Defendant has not presented any evidence to counter Plaintiff's negligence claim. (Pl's Mem. in Supp. of Mt. for Part. Sum. Judg. at 4-5). Defendant denies that he has admitted liability, and moves to amend his Answer a second time in order to remove and replace the statement that Plaintiff characterizes as an admission. (Def's Resp. in Opp. to Pl's Mt. for Part. Sum. Judg. at 6, 12).  Defendant also contends that Plaintiff's evidence fails to prove Defendant's liability, and that the witnesses who will purportedly testify that McKenzie's negligence caused the accident are of questionable credibility. (*Id.* at 15-20; Def's Supp. Mem. in Opp. to St. Paul Travelers' Mt. for Sum. Judg. at 3-7).

  1.  <u>**Standard of Review: Motion for Summary Judgment**</u>

Rule 56(c) of the Federal Rules of Civil Procedure permits the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.  But the party opposing summary judgment may not rest upon mere allegations or denials, and a "mere scintilla of evidence" is insufficient to overcome summary judgment.  *Id.* at 249-50.  Moreover, when the movant supports its motion

for summary judgment by affidavits, the adverse party may not rest upon the mere allegations or denials of their pleading, but the adverse party's response must be supported by affidavits or as otherwise provided by Rule 56 and must set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e).

Courts, in considering motions for summary judgment, view the facts and inferences in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 255; *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990); *Cole v. Cole*, 633 F.2d 1083 (4th Cir. 1980). Summary judgment is thus proper where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted).

2.  **Diversity of Citizenship**

A federal court sitting in diversity must apply the law of the state in which the suit was brought. *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992). Plaintiff's suit was brought in North Carolina, accordingly, North Carolina law governs the suit.

a.  **North Carolina Standard of Care**

In order to establish a claim for negligence in North Carolina, a plaintiff must show by a preponderance of the evidence that defendant owed her a duty of care, defendant's conduct breached that duty, the breach was the actual and proximate cause of plaintiff's injury, and damages resulted from the injury. *Reynolds v. United States*, 805 F. Supp. 336, 340 (W.D.N.C. 1992) ; *Southerland v. Kapp*, 59 N.C. App. 94, 95, 295 S.E.2d 602, 602 (1982) (citing *Coltraine v. Hospital*, 35 N.C. App. 755, 757-58, 242 S.E.2d 538, 540 (1978)).

Plaintiff alleges in her complaint that Defendant's decedent, McKenzie, committed

6

several acts of negligence, which actually and proximately caused Plaintiff's injuries.

(Complaint ¶ 9). Plaintiff alleges that McKenzie's negligent acts included:

> (a) failing to yield to the right-of-way; (b) failing to keep proper attention; (c) driving in a reckless and careless manner; (d) failing to keep a proper lookout for vehicles lawfully operating in the vicinity; (e) failing to have proper regard for the persons and property of others so situated; and (f) failing to keep proper control of her vehicle.

(*Id*.).

With regard to McKenzie's alleged negligent acts, and the standard of care to which she is held, North Carolina law provides:

> Any person who drives any vehicle upon a highway or public vehicular area without due caution and circumspection and at a speed or in a manner so as to endanger any person or property shall be guilty of reckless driving.

N.C. GEN. STAT. § 20-140(b).

> When a statute sets a standard of care for the protection of others, violation of that statute is negligence *per se*. . . But in the absence of a safety statute, conduct is judged by the "reasonably prudent person" standard, a violation of which is negligence. (citations omitted).

*Hinnant v. Holland*, 92 N.C.App. 142, 147, 374 S.E.2d 152, 155 (1988).

> [I]t is the general rule of law that the operator of a motor vehicle must exercise ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances. And in the exercise of such duty it is incumbent upon the operator of a motor vehicle to keep same under control, and to keep a reasonably careful lookout, so as to avoid collision with persons and vehicles upon the highway.

*Adams v. Beaty Service Co.*, 237 N.C. 136, 141, 74 S.E.2d 332, 336 (1953).

### b. Plaintiff's Motion for Summary Judgment Based on Defendant's Alleged Admissions to Liability and Defendant's Second Motion to Amend Answer

Plaintiff contends that she is entitled to Summary Judgment due to Defendant's alleged

7

admissions that McKenzie caused the accident. (Pl's Mem. in Supp. of Mt. for Part. Sum. Judg. at 4-5). Plaintiff points to paragraph 7 of Defendant's Answer and paragraph 10 of Defendant's Amended Answer as Defendant's admissions that McKenzie caused the accident. (*Id*. at 4). Paragraph 7 of Defendant's Answer states:

> [I]t's admitted that as the 3 vehicles were traveling East bound, Mrs. McKenzie attempted to move from the right lane to the center lane, and when she did so her vehicle came into contact with a vehicle operated by Mr. Conley which caused Mrs. McKenzie's vehicle to travel into the left land and came into contact with Plaintiff's vehicle. It's further admitted that both the Plaintiff's vehicle and Mrs. McKenzie's vehicle then went off the highway and onto the road over which the highway passed.

While paragraph 7 of Defendant's complaint does appear to admit how the accident was caused, it does not admit who caused the accident, or whether anyone, including McKenzie, was at fault. Thus, Plaintiff's contention that Defendant admitted in paragraph 7 of Defendant's Answer that McKenzie caused the accident is incorrect, and the Court will not find that paragraph 7 of Defendant's complaint is an admission as to Defendant's liability.

Paragraph 10 of Defendant's Amended Answer states:

Upon information and belief, the allegations contained in paragraph 10 of the Plaintiff's Complaint are admitted.

Paragraph 10 of Plaintiff's Complaint states:

Ms. McKenzie was alive at the time she caused the wreck, but died later as result of the injuries she sustained in the wreck.

Plaintiff contends that Defendant's admission to Paragraph 10 of Plaintiff's Complaint entitles her to Summary Judgment because Defendant effectively admitted that McKenzie caused the accident. (Pl's Mem. in Supp. of Mt. for Part. Sum. Judg. at 4-5). Defendant contends that he only intended to admit to Plaintiff's allegation that McKenzie survived the accident, and that

8

by admitting to Paragraph 10 in its entirety, he inadvertently admitted to Plaintiff's allegation that McKenzie caused the accident. (Def's Resp. in Opp. to Pl's Mt. for Part. Sum. Judg. at 10-12).

Defendant explains that he denied Paragraph 10 of Plaintiff's Complaint in his original Answer due to his belief that his mother did not survive the accident. (*Id*. at 8). Defendant further explains that he did not learn that McKenzie survived the accident until he received McKenzie's medical records, which was after he filed his Answer. (*Id*. at 8-9). Defendant states that, at Plaintiff's behest, he filed a Consent Motion to Amend his Answer admitting Paragraph 10 of Plaintiff's Complaint with the intention of admitting that McKenzie survived the accident. (*Id*. at 10). Defendant states that any admission that McKenzie caused the accident was inadvertent, and notes that such an admission is inconsistent and contradictory to Defendant's denials of Plaintiff's other allegations that the accident was caused by McKenzie's negligence. (*Id*. at 6-8, 10, 12). In order to correct his alleged admission that McKenzie caused the accident, Defendant moves to amend his Answer a second time, with the intention that such amendment would limit his admission to McKenzie's survival of the accident. (*Id*. at 12).

The law is well established that "the grant or denial of an opportunity to amend is within the discretion of the District Court." *Pittston Co. v. United States*, 199 F.3d 694, 705 (4th Cir. 1999). The Fourth Circuit has stated, "under Rule 15(a) leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment." *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000). None of the factors that would prevent the Court from giving Defendant leave to amend are present in this case. Based on the parties' filings, and Defendant's consistent intent to contest the issue of McKenzie's alleged negligence in this action, the Court finds that Defendant's apparent admission in paragraph 10 of Defendant's

9

Amended Answer that McKenzie caused the accident was inadvertent. As such, the Court <u>grants</u> Defendant's Second Motion to Amend Answer, and <u>denies</u> Plaintiff's Motion for Partial Summary Judgment on the grounds that Defendant admitted liability.

    **c.    Plaintiff's Motion for Summary Judgment Based on Defendant's Failure to Present Evidence that Contests McKenzie's Liability**

Plaintiff further contends that she is entitled to Summary Judgment because Defendant has failed to produce any evidence to contest Plaintiff's allegations of Defendant's negligence. (Pl's Mem. in Supp. of Mt. for Part. Sum. Judg. p. 5). Defendant responds that Plaintiff has failed to present sufficient evidence to prove her claim of negligence as a matter of law, reasserts his denial of Plaintiff's claim, and challenges the credibility of witnesses who will purportedly testify that McKenzie's negligence caused the accident. (Def's Resp. in Opp. to Pl's Mt. for Part. Sum. Judg., pp. 17-18; Def's Supp. Mem. in Opp. to St. Paul Travelers' Mt. for Sum. Judg., pp. 3-7).

As this Court has stated, "[m]atters involving negligence claims are not ordinarily good candidates for summary judgment disposition. Negligence disputes usually require the *factual* determination whether a party owed a duty or whether a defendant's actions proximately caused plaintiff's injury." *Lindsay v. Public Service Co. of N.C., Inc.*, 725 F. Supp. 278, 281 (W.D.N.C. 1989). *See also Surrette v. Duke Power Co.*, 78 N.C. App. 647, 650, 338 S.E.2d 129, 131 (1986) ("Summary judgment is rarely appropriate in negligence cases, even when there is no dispute as to the facts, because the issue of whether a party acted in conformity with the reasonable person standard is ordinarily an issue to be determined by a jury.").

The Court notes that Plaintiff's allegations of McKenzie's negligence are heavily

dependent on the purported testimony of Plaintiff herself, Plaintiff's husband, and Russel Conley, the driver of the third vehicle involved in the accident and the only eyewitness to the initial events that led to the accident.[2] All of these witnesses presumably have a significant interest in demonstrating McKenzie's negligence. Therefore, a determination of their credibility will be crucial to any evaluation of their testimony. The credibility of witnesses is best assessed by the jury. Consequently, statements by interested or potentially biased witnesses concerning the events in this case are not a suitable basis for finding that McKenzie was negligent as a matter of law. *See Drewitt v. Pratt*, 999 F.2d 774, 778 (4th Circ. 1993) ("[i]n assessing a motion for summary judgment, all justifiable inferences must be drawn in favor of the nonmoving party for '[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986)); *see also Surrette*, 78 N.C. App. at 650, 338 S.E.2d at 131 ("summary judgment may be granted in a negligence case where there is *no* question as to the credibility of witnesses....") (emphasis added). Therefore, Plaintiff's Motion for Partial Summary Judgment must be <u>denied</u>.

**B.      St. Paul Travelers' Motion for Summary Judgment**

St. Paul Travelers contends that it is entitled to Summary Judgment on its Counterclaim against Defendant based on largely the same assertions as Plaintiff, that Defendant admitted to liability in paragraph 7 of his Answer and paragraph 10 of his Amended Answer, and that

---

[2] The Court notes that Russel Conley's Affidavit is offered by St. Paul Travelers, not by Plaintiff. (St. Paul Travelers' Mt. for Leave to File Aff. of Russel Thomas Conley, Doc. #61). However, since Conley is purportedly a key witness on the ultimate issue of McKenzie's negligence, the Court will consider Conley to be a witness in support of Plaintiff's claim.

Defendant failed to present evidence to controvert the allegations of McKenzie's negligence. (St. Paul Travelers' Mem. in Supp. of Mt. for Sum. Judg. at 11-14). Defendant responds that St. Paul Travelers' subrogation claim was improperly brought pursuant to the procedures of North Carolina law, and that St. Paul Travelers' claim should have been brought pursuant to the procedures of Virginia law. (Def's Resp. in Opp. to St. Paul Travelers' Mt. for Sum. Judg. at 3-5). Defendant contends that under Virginia law, St. Paul Travelers' claim is premature, and therefore Summary Judgment for St. Paul Travelers should be denied. (*Id.*). Defendant further asserts the same arguments he asserted against Plaintiff's Motion for Summary Judgment, contending that St. Paul Travelers' has failed to present sufficient evidence to prove that Defendant was negligent as a matter of law, and that the witnesses who will purportedly testify that McKenzie's negligence caused the accident are of questionable credibility. (*Id.* at 8-11; Def's Supp. Mem. in Opp. to St. Paul Travelers' Mt. for Sum. Judg. at 3-7).

    a. **Controlling Law as to St. Paul Travelers' Subrogation Rights**

Defendant contends that St. Paul Travelers' subrogation rights are governed by Virginia law because Plaintiff's insurance policy was issued in the state of Virginia.[3] (Def's Resp. in Opp. to St. Paul Travelers' Mt. for Sum. Judg. at 3). St. Paul Travelers contends that its subrogation rights are governed by North Carolina law because they stem from Plaintiff's North

---

[3] Neither party has produced the actual insurance policy that covered Plaintiff. However, Defendant asserts that the insurance policy was issued in Virginia based upon Plaintiff's residence in that state. (Def's Resp. in Opp. to St. Paul Travelers' Mt. for Sum. Judg. at 3). St. Paul Travelers does not deny Defendant's assertion. (St. Paul Travelers' Rep. Mem. in Supp. of Mt. for Sum Judg. at 1). Furthermore, the Court notes that the Accident Report of the North Carolina Highway Patrol lists Plaintiff's vehicle as being registered in Virginia. (Aff. of Trooper Phillip Morgan Dixson, Ex. A at 2). Thus, it can be inferred that the insurance policy that covered Plaintiff was issued pursuant to Virginia law.

Carolina negligence claim. (St. Paul Travelers' Rep. Mem. in Supp. of Mt. for Sum Judg. at 1-2). Thus, in order to determine which state's law controls St. Paul Travelers' subrogation rights, the Court must first determine the source from which St. Paul Travelers' subrogation rights arose.

North Carolina courts have stated that subrogation rights in the insurance policy context arise from the terms of the insurance policy between the insured and her insurer. *See In re Declaratory Ruling by North Carolina Comm'r of Ins. Regarding 11 N.C.A.C. 12.0319*, 134 N.C. App. 22, 24, 31, 517 S.E.2d 134, 137, 141 (1999) (citations omitted). Therefore, St. Paul Travelers' subrogation rights arose from its insurance policy with Plaintiff, which was issued pursuant to the laws of Virginia.

Where a North Carolina court is asked to determine which state's law governs a party's rights under an out-of-state automobile insurance policy, the Supreme Court of North Carolina has stated:

> [T]he general rule is that an automobile insurance contract should be interpreted and the rights and liabilities of the parties thereto determined in accordance with the laws of the state where the contract was entered even if the liability of the insured arose out of an accident in North Carolina . . . With insurance contracts the principle of *lex loci contractus* mandates that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract . . . Construing N.C.G.S. § 58-3-1, this Court recognized an exception to this general rule where a close connection exists between the State and the interests insured by an insurance policy . . . However, the mere presence of the insured interests in this State at the time of an accident does not constitute a sufficient connection to warrant application of North Carolina law.

*Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428, 526 S.E.2d 463, 465-66 (2000). Therefore, pursuant to North Carolina's general rule regarding an insurer's rights, where such rights arise from an out-of-state automobile insurance policy, the Court finds that St. Paul Travelers'

subrogation rights are controlled by Virginia law.[4]

Defendant asserts that under Virginia law, St. Paul Travelers' claim is premature, and therefore St. Paul Travelers is not entitled to summary judgment. (Def's Resp. in Opp. to St. Paul Travelers' Mt. for Sum. Judg. at 3-5). St. Paul Travelers responds that even if Virginia law applies to its claim, its claim is not premature, and it is still entitled to summary judgment based on Defendant's alleged admissions to liability and failure to present evidence to controvert McKenzie's alleged negligence. (St. Paul Travelers' Rep. Mem. in Supp. of Mt. for Sum Judg. at 5-6).

With regard to an insurer's subrogation rights, Virginia law states:

> Any insurer paying a claim under the endorsement or provisions required by [the subsection governing payments of uninsured and underinsured motorist benefits] of this section shall be subrogated to the rights of the insured to whom the claim was paid against the person causing the injury, death, or damage and that person's insurer...

VA CODE ANN. § 38.2-2206 (G).

Defendant contends that St. Paul Travelers' claim is premature because Virginia law requires Plaintiff first to obtain a judgment in excess of Defendant's policy liability limits before St. Paul Travelers can bring a claim as a subrogee to Plaintiff's claim. (Def's Resp. in Opp. to

---

[4] St. Paul Travelers attempts to distinguish this case from the North Carolina cases which were cited by Defendant in support of his contention that Virginia law controls St. Paul Travelers' claim. (St. Paul Travelers' Rep. Mem. in Supp. of Mt. for Sum Judg. at 3-5). The cases cited by Defendant involve North Carolina courts interpreting the terms of out-of-state insurance policies where a dispute exists between an insurer and an injured party. *See Fortune Ins. Co.*, 351 N.C. at 425-30, 526 S.E.2d at 464-66; *Johns v. Automobile Club Ins. Co.*, 118 N.C. App. 424, 425-28, 455 S.E.2d 466, 467-69 (1995). The Court notes that, in contrast to the facts in the cases cited by Defendant, the actual terms of Plaintiff's Virginia policy are not in question in this case. However, the *source* of St. Paul Travelers' subrogation rights *is* in question. As the Court noted, *supra*, North Carolina courts are instructed to look to the insurance policy as the source of the insurer's subrogation rights. Therefore, the Court finds North Carolina's general choice of law rule for determining a party's rights, where such rights arise from an out-of-state automobile insurance policy, is sufficiently analogous to merit application in this case.

St. Paul Travelers' Mt. for Sum. Judg. at 5-7). Virginia law, however, permits an insurer to settle a claim for uninsured or underinsured motorist coverage with its insured, then pursue an action against the alleged tortfeasor as a subrogee to its insured's claim. *See United Services Automobile Assoc. v. Nationwide Mutual Ins. Co.*, 218 Va. 861, 865, 241 S.E.2d 784, 787 (1978) ("[insurer] did have the right to settle its contractual obligation under its policy with [its insured], rather than requiring her to obtain a judgment against [the tortfeasor]"); *id*. at 866, 241 S.E.2d at 788 ("[w]hen [insurer] settled with [its insured] it was subrogated to her right to institute an action on her tort claim against [the tortfeasor] . . . ."). Thus, St. Paul Travelers' claim is not premature under Virginia law and the Court may address the merits of its Motion for Summary Judgment.[5]

### b. St. Paul Travelers' Motion for Summary Judgment Based on Defendant's Alleged Negligence

St. Paul Travelers contends that it is entitled to summary judgment on the issue of McKenzie's negligence based on Defendant's alleged admission to liability in paragraph 7 of his Answer and paragraph 10 of his Amended Answer, and Defendant's failure to present evidence to controvert the allegations of McKenzie's negligence. (St. Paul Travelers' Mem. in Supp. of Mt. for Sum. Judg. at 11-14). As the Court noted, *supra*, St. Paul Travelers' contentions rest on the same grounds as those of Plaintiff. Thus, for the same reasons that the Court denied Plaintiff's Motion for Partial Summary Judgment, St. Paul Travelers' Motion for Summary

---

[5] The Court notes that it would reach the merits of St. Paul Travelers' Motion for Summary Judgment under either the North Carolina procedures governing an insurer's subrogation rights, or the Virginia procedures governing subrogation rights. *See* N.C. GEN. STAT. § 20-279.21(b)(4). Thus, St. Paul Travelers' settlement with Plaintiff pursuant to the North Carolina procedures governing subrogation rights does nothing to hinder its subrogation rights under Virginia law or the timeliness of this action.

Judgment must be <u>denied</u>.

## III.  CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Partial Summary Judgment is hereby **DENIED**.

**IT IS FURTHER ORDERED** that St. Paul Travelers' Motion for Summary Judgment is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Second Motion to Amend Answer is hereby **GRANTED**.

Signed: May 2, 2007

Richard L. Voorhees
United States District Judge